POTTER (ATLEE v.). See Case No. 636.

## Case No. 11,321.

### POTTER et al. v. BRAUNSDORF et al.

[7 Blatchf. 97.] [1]

Circuit Court, S. D. New York. Dec. 30, 1869.

PATENTS—CONSTRUCTION—SEWING MACHINES—INFRINGEMENT—REISSUE TO ASSIGNEE—EXTENSION TO PATENTEE.

1. The great feature of the invention of John Bachelder, embodied in the reissued patent granted to him, December 12th, 1865, for an "improvement in sewing machines," was the production of a sewing machine in which the cloth to be sewn is supported horizontally and is fed through the machine perpetually.

2. The sewing machine called the Aetna machine infringes the first, second, third, fourth, fifth, sixth, and eleventh claims of that patent, and those claims are not invalid for want of novelty.

3. The original patent was granted to Bachelder May 8th, 1849. It was reissued to his assignee November 2d, 1858, the specification of such reissue being signed by the assignee and not by Bachelder. Such reissue was not assigned to Bachelder. The original patent was, on his application, extended to him by the commissioner of patents, the certificate of extension being made on a copy of such original, because of the loss of such original, and not on the original itself or on such reissue: Held, that such extension was valid. The case of Potter v. Holland [Case No. 11,329], cited and applied.

[Cited in Bachelder v. Moulton, Case No. 706; Potter v. Stewart, 7 Fed. 215.]

[This was a bill in equity by Orlando B. Potter and others against Julius E. Braunsdorf and Henry Weil.]

This was a final hearing, on pleadings and proofs, of a suit in equity for a perpetual injunction and an account of profits, founded on the alleged infringement of letters patent reissued to John Bachelder December 12th, 1865 [No. 2,135], for an "improvement in sewing machines." The original letters patent were granted to Bachelder, as inventor, May 8th, 1849 [No. 6,439], for fourteen years. Isaac M. Singer and Edward Clark having

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

become assignees of the patent, it was reissued to them, as such assignees, November 2d, 1858, the specification of such reissue being signed by Singer and Clark and not by Bachelder. On the application of Bachelder, made after such assignment and reissue, the original patent granted to him was extended for seven years from May 8th, 1863, by the commissioner of patents. The original patent, so extended, was reissued to Bachelder September 22d, 1863, and was again reissued to him, as before stated, December 12th, 1865 [No. 1,543].

Edwin W. Stoughton and George Gifford, for plaintiffs.

A. C. Washburn and Charles A. Durgin, for defendants.

BLATCHFORD, District Judge. The specification of the reissued patent on which this suit is brought states: "In sewing machines operated with an eye-pointed needle and sewing with a continuous thread or threads, known to me prior to my invention, important defects existed, which operated as serious limitations to their usefulness and prevented their adoption to the extent their other merits demanded. In such prior machines, the material to be sewed was held vertically, by suspending it from points projecting from a plate technically called a baster plate, or in clamps, the body of the material hanging below and from such plate or clamps, and being moved through the machine, or fed to the sewing mechanism, while hanging in such vertical position. This method of holding and feeding the material required that it should be placed upon the points of the baster plate, or within the jaws of the clamps, by an operator, who, while using his hands for this purpose, could not at the same time properly attend to the sewing. It also threw the whole weight of the material upon that part of it which was held upon the points or in the clamps. Moreover, it was not well adapted for crooked or irregularly curved seams, and did not allow the operator conveniently to examine or inspect the stitches while the seam was being made, nor did it leave the material free to be directed by the operator conveniently during its passage to the needle, while the machine was in operation, but was applicable only to such seams and parts of garments as could be thus adjusted upon and suspended from the baster plate, or in clamps, and required so much time and labor in adjusting even such seams to the plate or clamps, that it was of limited utility in the branches of manufacture to which the sewing machine was otherwise applicable, or for domestic use. The object of my invention is, to hold and feed the material past the needle, horizontally instead of vertically, in such manner that the operator is not required to use his hands to hold the material vertically and apply it to the points or jaws of the feed, and, consequently, that he may inspect, guide, and give direction to the seam, during the continuous action of the machine. My invention is to be found, therefore, in the combination of mechanisms for supporting the cloth, holding it, and moving it past the needle with a regular intermittent action, with each other, and with the sewing mechanism and other essential parts of the sewing machine. The leading members of these combinations are: First. A device which advances the material regularly and horizontally, by an intermittent motion, over and upon the horizontally holding surface through which the needle acts, and over and upon the supporting bed by which the material is supported, and delivers it automatically, without requiring the sewing to be stopped for the purpose of attaching fresh portions of the material to the feeding instrument. This advancing device is hereinafter termed a 'perpetual feed.' Second. A holding surface, upon which the material immediately about the needle rests, and is borne up horizontally under the thrust of the needle. Third. A receiving plate, so arranged with reference to the feed, as to receive and support the material in its passage from the feed. Fourth. A yielding pressure holder, which rests upon the upper surface of the material, near the needle, and adapts itself to the varieties in the thickness of the material, and holds it to the supporting bed. Fifth. A supporting bed, provided with a throat for the passage of the needle. This supporting bed includes, as one of its parts, what is elsewhere termed, in this specification, the 'holding surface,' and the term 'supporting bed' is to be so understood wherever it is hereinafter used. Upon this bed the material to be sewed rests, and is supported against the force of gravity, the horizontality of this bed enabling it to support the material while it is in the machine. For greater clearness and certainty, I will here state the functions and mode of operation of each of these parts. The device termed the 'perpetual feed' takes hold of and moves forward the material horizontally and regularly, by an intermittent motion, upon and over the horizontally holding surface through which the needle acts, and upon the horizontally supporting bed upon which the material rests, and under the yielding pressure holder, and delivers it upon the receiving plate, which is placed behind the feed to receive it, taking hold of a fresh portion of the material, and delivering an equal portion, at each stitch. This feed thus takes hold of the material, moves it forward upon the horizontal supporting bed over the horizontally holding surface, and delivers it perpetually upon the receiving plate, so that any length of seam desired may be fed through and delivered during the continuous action of the machine. Although I have used an endless apron, furnished with points, as my perpetual feed, I do not intend to limit myself to the use of

such an apron, as a revolving circular table or a cylinder may be substituted therefor, the points being inserted in, or made to project from, the curved surface of either of them. The horizontally holding surface upon which the material immediately about the needle is supported, is so constructed and arranged with reference to the feed and needle, that it performs the office of supporting, horizontally, each portion of the material successively, in the line of the seam, against the thrust of the needle, firmly, in its normal, and undistorted condition, so that the stitches, when set, shall be regular and uniform. Each portion of the material in which stitches are to be set throughout the line of the seam, is moved by the feed, stitch by stitch, horizontally, under the needle, and over and upon this horizontally holding surface, where it is held during the passage of the needle, or while the stitch is being made. The receiving plate is so constructed and arranged, with reference to the feed, that it performs the office of receiving the material from the feeding instrument, and supporting it in its passage from the machine, thus insuring the free delivery and passage of the material from the machine, during its operation in sewing a seam, without entanglement with other members of the machine. The form and size of this receiving plate are mere matters of expediency, so long as it retains and performs its functions, as herein described. The supporting bed holds up the material by simply supporting it against the force of gravity, without requiring the attachment of the material to it, and, at the same time, by its throat, permits the needle to pierce it, and protrude the loop of needle-thread through it. It so holds it up while the feed is moving it forward, and the needle is piercing it, the material resting upon the bed while under the action of the needle. The yielding pressure holder rests upon the upper surface of the material, near the needle, and holds it, by a yielding pressure, to the supporting bed upon which it rests. This holder is so hung or mounted, that it may be readily raised by the operator, to place the material in, or remove it from, the machine, and it will rise and descend during the operation of the machine, and accommodate itself to the varying thicknesses and inequalities of the material or garment being sewed, while it maintains a constant pressure upon the material throughout the whole length of the seam. The combination of these supporting, holding and feeding mechanisms I believe to be new. It holds and feeds the material upon a supporting bed or surface, on which it rests of its own gravity, under convenient inspection, direction, and control of the operator, and thus saves the time and labor heretofore required in supporting or hanging up the material upon the points of a baster plate or in clamps. It also so holds and feeds the material, that seams of indefinite length may be made, and piece after piece be sewed during the continuous action of the machine, and thus saves the time and trouble heretofore required to attach the material by hand to the feed before it was sewed, and to detach it therefrom by hand after it was sewed. The sewing mechanism with which I have combined my improvements in my machine herein represented, is the same employed in the machine said to have been invented by Charles Morey and Joseph B. Johnson. It is one of the well-known sewing mechanisms to which my improvements are applicable, or with which they may be used. The mechanism by which the stitches are made, forms, of itself, no part of my invention, and any other sewing mechanism can be employed instead of the one employed by me, which parties employing my invention may prefer, so long as said sewing mechanism makes the stitches in proper time and order, in combination with my improvements. The reciprocating eye-pointed needle employed by me is well known in its functions and mode of operation, which are essentially the same in my machine as in other sewing machines. I have represented, in the drawings, other parts which are found in previous sewing machines, but to these I make no claim."

In the machine, as described in the specification, the holding surface is pierced with a throat, to permit the needle to pass downward. The throat is slightly larger than the needle, so that the latter can carry the thread freely through it, but it is too small to permit the passage of the material. The needle moves in a vertical plane, and descends, at each stitch, from above the holding surface, carrying, in its eye, a loop of thread through the material, and through the throat provided in the holding surface, and below such holding surface. This needle is attached to a needle-carrier, which has a reciprocating movement imparted to it. The perpetual feed consists of a belt of leather, supported by and running around three or any other suitable number of cylinders, and having a series of points fixed in and projecting from its upper surface, near the needle, at such distances apart as occasion may require. This belt moves intermittently, after each withdrawal of the needle, through just the distance necessary to space the next stitch. The yielding pressure holder lies upon the surface of this feed or belt. It is a heavy roller, free to revolve, and so hung by links, that it will approach to and recede from the belt, so as to accommodate itself to the varying thicknesses of the material, and maintain a constant pressure thereon throughout the whole length of the seam. The receiving plate is of such width and size as occasion may require. One end of it is brought in close contact with the surface of the feed, in such manner as to cause the material, when it is carried to it by the feed, to be delivered upon and over said plate, and from the points and feed. The

upper surface of the belt, the holding surface and the receiving plate, constitute together a supporting bed, which supports the material horizontally in the machine against the force of gravity, while permitting the passage of the needle through it; and upon this bed the material rests while the needle is acting upon it, while passing through the machine, and while being delivered therefrom. Connected with the specification are five figures of drawings representing, severally, different views of the machine—a top view; a front elevation; a vertical, central and horizontal section; a transverse vertical section, taken through the middle of the continuous feeding belt; and another vertical and transverse section. Appropriate machinery is described for imparting a reciprocating movement to the needle-carrier, and for moving the feeding belt intermittently, and the other parts of the machine and their action are appropriately described. In the operation of the machine, the material or garment is laid upon the perpetual feed belt and the holding surface, the portion where the stitch is being made resting smoothly upon the horizontally holding surface, over the throat for the passage of the needle, the portion beyond where the stitch is being made, if any, being upon the belt past the needle, and upon or towards the receiving plate, and the remainder lying in front of the needle upon the belt. The yielding pressure holder or roller is permitted to bear upon the material or garment, holding it down to the feed and upon the supporting bed. The hands of the operator rest upon the material or garment before the needle, directing it in its passage to the needle. The feed moves the material or garment in the line of the seam regularly and intermittently, stitch by stitch, horizontally, over and upon the holding surface and supporting bed, and delivers it to or upon the receiving and supporting plate, taking hold of a fresh portion, and feeding and delivering an equal portion, at each stitch, automatically. The holding surface holds or bears up each successive portion of the material, throughout the length of the seam, firmly, in its normal or undisturbed condition, against the thrust of the needle, as the same is moved over it by the feed. The receiving plate receives the material from the feed, and supports it when discharged, preventing it from being entangled in the machine, and ensuring its free delivery during the operation of the machine, as fast as sewed. The yielding pressure holder bears upon the upper surface of the material near the needle, and maintains a constant yielding pressure thereon, throughout the whole length of the seam, holding it to the bed on which it rests and to the feed, and rising and descending to accommodate itself to all the cross seams, inequalities, and varying thicknesses of the material. The material rests, during its entire passage through the machine and delivery therefrom, of its own weight, upon a supporting bed, as cloth rests upon a table, under the control and convenient inspection of the operator. Seams of indefinite length, or piece after piece, can be fed through, sewed, and discharged perpetually, during the continuous, uninterrupted, progressive action of the machine.

As shown by the evidence, the great feature of the invention of Bachelder, was the production of a sewing machine in which the cloth to be sewn is supported horizontally, and is fed through the machine perpetually. His machine was the first sewing machine in which the cloth was supported horizontally and advanced by an automatic feed of any kind. It is scarcely possible to estimate sufficiently the importance of such an invention, in the art of sewing by machinery.

The reissued patent sued on contains fourteen claims. The bill alleges that the first, second, third, fourth, fifth, sixth, and eleventh claims are infringed by the defendants. Those claims are to the following several combinations: (1) "In combination, the supporting bed which supports the material horizontally in the machine, and is provided with a throat for the passage of the needle, and the constant yielding pressure holder, each having the functions and mode of operation hereinbefore specified." (2) "In combination, the supporting bed, the constant yielding pressure holder, and the reciprocating eye-pointed needle, each having the functions and mode of operation hereinbefore specified." (3) "In combination, the supporting bed, the constant yielding pressure holder, and the reciprocating needle carrier, each having the functions and mode of operation hereinbefore specified." (4) "In combination, the supporting bed, the yielding pressure holder, the reciprocating eye-pointed needle, and the perpetual feed which moves the material horizontally under and past the needle, while it is supported by the supporting bed, each having the functions and mode of operation hereinbefore specified." (5) "In combination, the supporting bed, the yielding pressure holder, the reciprocating needle carrier, and the perpetual feed, which moves the material horizontally upon and over the supporting bed, each having the functions and mode of operation hereinbefore specified." (6) "In combination, the holding surface which supports the material immediately about the needle, horizontally, under the thrust of the needle, and the perpetual feed which moves the material horizontally, under and past the needle, upon and over such holding surface, each having the functions and mode of operation hereinbefore specified." (11) "In combination, the horizontally holding surface immediately about the needle, the perpetual feed, the yielding pressure holder, and the reciprocating needle carrier, each having the functions and mode of operation hereinbefore specified."

The machine of the defendants is called

the "Aetna Machine." It is a shuttle machine, having a reciprocating eye-pointed needle, and needle carrier, moving substantially in vertical planes, a yielding pressure holder, a perpetual feed, a holding surface, provided with a throat for the passage of the needle, and a table, a part of which receives and aids in supporting the material or garment. The perpetual feeding device in it is a short cylinder, arranged upon a horizontal axis, and caused to move intermittently. This cylinder is so arranged that the cloth lies horizontally upon it, and is partially supported by it. The cylinder is immediately in front of the needle, and of the horizontal holding surface, and causes the material to be fed perpetually, so that a seam of any length can be sewn, without removal or replacement of parts of the machine, and delivers the cloth, with a seam sewn in it, upon the receiving plate. The cylinder is provided with a roughened surface, instead of pins. In all particulars respecting its construction, arrangement, and mode of operation, except in regard to such pins, it is identical with the perpetual feeding device of Bachelder. By reason of its having a roughened surface, instead of pins, seams of any desired curvature can be sewn upon the machine, and the operator is relieved from the necessity of impaling the cloth upon the pins, or so directing the cloth that the pins will, in their revolutions, enter it. In this respect, the Aetna machine is a great improvement upon Bachelder's, but, nevertheless, it embodies Bachelder's invention. A part of the table or platform in the Aetna machine occupies the same position, with regard to the feeding cylinder, that the receiving plate in Bachelder's machine does with regard to the feeding belt, and receives and aids in supporting the cloth, as it is delivered by the feeding cylinder. This part of the table is, in construction, arrangement, and combination with the feeding device, the same as Bachelder's receiving plate. There is, in the Aetna machine, behind the feeding cylinder, and about level with its upper surface, a piece of iron, with a horizontal surface, provided with a throat for the passage of the needle. This piece of iron is, in construction, operation, and arrangement, with reference to the needle, the working surface of the feeding cylinder, and that portion of the table which constitutes a receiving plate, identical with Bachelder's horizontal holding surface. The working surface of the feeding cylinder. that portion of the table which constitutes a receiving plate, and the horizontal holding surface, have, in the Aetna machine, the same relative arrangement, and co-operate in supporting the cloth horizontally in the same way, as the same parts in Bachelder's machine, and are, therefore, the supporting bed of Bachelder's machine. The fact that there are, in the Aetna machine. additional parts, which support the cloth, does not alter the char-

acter or mode of operation of any or all of the other parts. There is, in the Aetna machine, a yielding pressure holder, consisting of a curved foot, pressed by a spring, so as to bear upon the cloth. Though differing formally, in construction, from the pressure holder in Bachelder's machine, it is combined in the same way with the surface of the perpetual feeding device, and has the same mode of operation. It is free to rise and fall, and is the equivalent of Bachelder's roller. The fact that, in addition to performing the same duties as Bachelder's roller, it also acts as a needle stripper, does not make it any the less the equivalent of Bachelder's roller, in respect to the duties performed in common by both. The Aetna machine has an eye-pointed needle, reciprocating in substantially a vertical plane, and combined with the other parts of the machine, in the same way that the eye-pointed needle, in Bachelder's machine, is combined with the corresponding parts of that machine. The Aetna machine has, also, a reciprocating needle carrier, identical with the one in Bachelder's machine, and performing the same operation in combination with the parts with which it is combined.

This statement of the construction and arrangement of the Aetna machine and of the points of resemblance and of difference between it and the Bachelder machine, shows that, beyond any doubt, the Aetna machine infringes upon each one of the seven claims of the Bachelder patent, alleged in the bill to be infringed.

Nothing is shown to affect the novelty of the said seven claims. The invention of Jotham S. Conant was subsequent in date to that of Bachelder, and was so conceded to be by the counsel for the defendants on the hearing.

The answer sets up, as a defence. that Singer and Clark, while owners of the original patent by assignment, surrendered it and obtained a reissue thereof on the 2d of November. 1858; that such reissued patent was not assigned to Bachelder prior to the granting of the extension. and was in force when such extension was granted; that the certificate of extension was made upon a copy of the original patent, and not upon the original patent itself or upon such reissued patent: and that such extension and the subsequent reissues of the patent were without authority of law, and are null and void. Bachelder having assigned the original patent to Singer and Clark. it was surrendered by them, and a reissue of it was granted to them November 2d, 1858, on an amended specification signed by Singer and Clark and not signed by Bachelder. Bachelder petitioned for the extension of the original patent. The certificate of extension made by the commissioner of patents is dated on the 21st of April, 1863, and certifies that the original patent is extended for the term of seven years from the 8th of May, 1863, and orders that, as it ap-

pears that the original patent has been lost and cannot be produced, the certificate of extension be entered on a certified copy thereof. On this state of facts, it is contended on the part of the defendants, that, as the original patent was surrendered on the 2d of November, 1858, and was not in existence thereafter, and as only the reissue of that date was in existence thereafter down to and until after the 8th of May, 1863, the extension was an extension of a patent not in existence, and was made after the term of the original patent had expired by such surrender, and, therefore, in violation of the provision of the 18th section of act of July 4th, 1836 (5 Stat. 125) which provides, that "no extension of a patent shall be granted after the expiration of the term for which it was originally issued;" and that, consequently, the extension is null and void. The view urged is, that such surrender extinguished the original patent so completely that any rights which, under the said 18th section, Bachelder had, after such surrender, to apply for and obtain an extension, could be exercised by him only to obtain an extension of the reissue to Singer and Clark, and must be asserted by him only under and in respect to such reissue. These views cannot be maintained. The question is disposed of by the decision in the case of Potter v. Holland [Case No. 11,329], made by Mr. Justice Nelson and Judge Ingersoll, in 1858. The court say: "We adopt the rule laid down by Judge Story, in the case of Woodworth v. Stone [Id. 18,021], that it is not in the power of the patentee, by a surrender of his patent, to affect without their consent, the rights of third persons, to whom he had previously passed his interest in the whole or a part of the patent. This consent may be manifested, either by joining in the surrender with the patentee, or by previously authorizing it, or by subsequently ratifying or approving it. To take advantage and benefit of it, would be a ratification. When such consent is given, the rights of the parties so consenting, in and to the old patent, are forever gone." Again, the court say: "To determine, then, the question, whether the rights of a third person to whom a patentee has previously passed his interest in a part of a patent, can be affected, without his consent, by the surrender of the old patent by the patentee alone, and the taking of a reissued one, it is necessary to determine whether, after such surrender and reissue, (both the surrender and the reissue being valid,) such third person has the same rights under the old patent, if he chooses not to take advantage of the surrender and the reissue, that he had to that patent before such surrender and reissue. If he has, then it will follow, that, by the surrender and the reissue, his rights have not been injuriously affected, and, consequently, that there can be no valid objection to the same." Still further, they say: "It is objected, that, if the person to whom the patentee has passed his

interest in a part of the patent, can hold the right so passed, under such patent, after the same has been surrendered by the patentee and a reissued one obtained, and if the patentee can, at the same time, hold the rights not so passed to such person under and by virtue of the reissued patent, one right to an invention may exist in one person, in one part of the United States, and a different right to the same invention may exist in another person, in a different part of the United States, the one right evidenced by one patent, with a transfer of the right therein, and the other right evidenced by another patent; that there would be two or more patents to secure the different rights which different persons might have to one whole invention; and that this would not be in accordance with the patent laws of the United States, but directly opposed to the same, because such laws authorize only one patent for one whole invention. The object of a patent is, to secure rights to an invention throughout the whole of the United States. We can discover no good reason why a portion, or the whole, of the invention, for a particular portion of the United States, may not be secured by one patent, and the remaining portion of the invention, for the residue of the United States, be secured by another patent. These two patents would, in effect, constitute together but one patent for the whole invention, for the whole United States." These principles and views apply, with especial force, to the case in hand. Where a patentee, having secured his invention by a patent with a specification in such form as he regards to be most proper, assigns the entire patent for the original term only, reserving his right, under the 18th section of the act of 1836, to apply for and obtain an extension, it ought not to be, and it is not, in the power of the assignee, by surrendering the patent and obtaining a reissue of it, on a specification not signed, assented to, or adopted by the patentee, and which perhaps the patentee may regard as rendering the reissued patent invalid, or as securing, by new and different claims, rights of little value, to affect, without his consent, the statutory right conferred on the patentee to apply for and obtain an extension of the only patent which he has ever adopted or assented to. The point taken that such right is thus affected, is not made with any grace, nor is it entitled to any favor. It is not made in the interest of the assignees, Singer and Clark, who obtained the reissue. They have no interest whatever in the extended term. Their rights expired with the first term. The point is taken in the interest of infringers, to whom it must be a matter of indifference whether the certificate of extension was made on the original patent, or on the reissue granted to Singer and Clark. As Bachelder did not choose to take advantage of the surrender and reissue, or to ratify and adopt them, he had, after such surrender and reissue, the

same rights, in respect to obtaining an extension or prolongation of the original term of fourteen years, under the original patent, that he had before such surrender and reissue. The fact that his assignment to Singer and Clark was of the whole original patent, and not of an undivided part thereof, or. of his interest in the same within and throughout a specified part of the United States, can make no difference. He still retained his right to apply for an extension of the original patent, as fully as he would have done if he had conveyed away less than the whole of his interest in the original term. The extended term did not come into being until the term granted by the reissue expired, so that the apparent objection does not obtain that there were two patents in existence at the same time for one and the same invention. The inhibition, in the 18th section of the act of 1836, against granting an extension after the expiration of the term for which a patent was originally issued, was intended to close the door absolutely, after the fourteen years have expired, against the issuing then of a further seven years' grant. The mischief to be guarded against was, that after the fourteen years had expired, individuals who had relied on such expiration should not be surprised by a grant thereafter of a new term of seven years. In the present case, the fourteen years had not expired when the extension was granted by the certificate referred to. The case of Moffitt v. Garr, 1 Black [66 U. S.] 273, has no application to the present case. There, the patentee himself had surrendered his patent, and the question was whether. after such surrender, he could maintain a suit at law to recover damages for an infringement of the surrendered patent.

The objections to the validity of the extension are overruled, and there must be a decree for a perpetual injunction and an account, in respect to the seven claims referred to, with costs to the plaintiffs.

[For another case involving this patent, see Case No. 706.