BACHE, (FREVALL v.) See Case No. 5,113.

BACHE, (JONES v.) See Case No. 7,454.

## Case No. 706.

### BACHELDER v. MOULTON et al.

[11 Blatchf. 304;[1] 6 Fish. Pat. Cas. 488; 4 O. G. 501.]

#### Circuit Court, S. D. New York. Sept. 25, 1873.

PATENTS FOR INVENTIONS — SEWING MACHINES — ANTICIPATION.

1. The reissued letters patent granted to John Bachelder, December 12th, 1865, for an "improvement in sewing machines," and extended [by act] for seven years from the 8th of May, 1870, are infringed by the Whitney sewing machine, which uses, as a perpetual feed, the feed of Allen B. Wilson, covered by reissued patent No. 346, granted to him January 22d, 1856, and reissued patent No. 414, granted to him December 9th, 1856.

[Cited in Potter v. Stewart, 7 Fed. 215.]

2. A decision, in a suit brought for an infringement of the Wilson patents, that the prior existence of the Bachelder patent did not destroy the novelty of the Wilson patents, is not a decision that the use of the feeding arrangement of the Wilson patents does not infringe the Bachelder patent.

3. The Wilson patents cover inventions not found in the Bachelder patent, but a machine constructed according to the Wilson patents embraces inventions claimed in the Bachelder patent.

[In equity. Suit by John Bachelder against William J. Moulton and others on reissued letters patent for an "improvement in sewing machines," granted to complainant December 12, 1865. Complainant moves for provisional injunction. Granted.

[The original patent was granted to same May 8, 1849. There were two intermediate reissues, and an extension. The claims of the reissue sued upon are as follows: "First. I claim, in combination, the supporting bed, which supports the material horizontally in the machine, and is provided with a throat for the passage of the needle and the constant yielding pressure-holder, each having the functions and mode of operation hereinbefore specified. Second. I claim, in combination, the supporting bed, the constant yielding pressure holder, and the reciprocating eye-pointed needle, each having the func-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. Syllabus taken from Blatchford's Reports, and statement from Fisher's Patent Cases.]

tions and mode of operation hereinbefore specified. Third. I claim, in combination, the supporting bed, the constant yielding pressure-holder, and the reciprocating needle-carrier, each having the functions and mode of operation hereinbefore specified. Fourth. I claim, in combination, the supporting bed, the yielding pressure-holder, the reciprocating eye-pointed needle, and the perpetual feed which moves the material horizontally under and past the needle while it is supported by the supporting bed, each having the functions and mode of operation hereinbefore specified. Fifth. I claim, in combination, the supporting bed, the yielding pressure-holder, the reciprocating needle-carrier, and the perpetual feed which moves the material horizontally upon and over the supporting bed, each having the functions and mode of operation hereinbefore specified. Sixth. I claim, in combination, the holding surface which supports the material, immediately about the needle, horizontally under the thrust of the needle, and the perpetual feed which moves the material horizontally under and past the needle, upon and over such holding surface, each having the functions and mode of operation hereinbefore specified. Seventh. I claim, in combination, the holding surface, which supports the material immediately about the needle, horizontally under the thrust of the needle, the perpetual feed which moves the material horizontally under and past the needle, upon and over such holding surface, and the receiving-plate, which receives the material from the feed during the operation of the machine in sewing a seam, each having the functions and mode of operation, hereinbefore specified. * * * Ninth. I claim, in combination, the horizontally holding surface immediately about the needle, the perpetual feed, and the yielding pressure-holder, each having the functions and mode of operation hereinbefore specified. Tenth. I claim, in combination, the horizontally holding surface immediately about the needle, the perpetual feed, the yielding pressure-holder, and a reciprocating eye-pointed needle, each having the functions and mode of operation hereinbefore specified. Eleventh. I claim, in combination, the horizontally holding surface immediately about the needle, the perpetual feed, the yielding pressure-holder, and the reciprocating needle-carrier, each having the functions and mode of operation hereinbefore specified. Twelfth. I claim, in combination, the receiving plate and the perpetual feed, each having the functions and mode of operation hereinbefore specified. Thirteenth. I claim, in combination, the horizontally holding surface immediately about the needle, the perpetual feed, and reciprocating needle-carrier, each having the functions and mode of operation hereinbefore specified. Fourteenth. I claim, in combination, the perpetual feed, the receiving plate, and the yielding pressure-holder, each having the functions and mode of operation here-

inbefore specified." The further facts necessary to an understanding of the case are sufficiently set forth in the opinion of the court.] [2]

George Gifford and Solomon J. Gordon, for plaintiff.

Theodore Cuyler and Andrew Boardman, for defendants.

BLATCHFORD, District Judge. The reissued letters patent granted to the plaintiff, December 12th, 1865, for an "improvement in sewing machines," and on which the motion for a provisional injunction in this case is made, were the foundation of the suit of Potter v. Braunsdorf, [Case No. 11,321,] decided by this court, on final hearing. Every question necessary or pertinent to the decision of the present motion was considered in that case, and disposed of adversely to the defence. Since that time such reissued patent has been, by an act of congress approved July 14, 1870, (16 Stat. 656,) extended for seven years from the 8th of May, 1870.

The sewing machine of the defendants in the former case was called the Aetna machine, and employed, as a perpetual feeding device, a cylinder moving intermittently, by revolving on a horizontal axis, and so arranged that the cloth laid horizontally upon it, and was partially supported by it. Such cylinder was situated immediately in front of the needle, and was provided with a roughened surface, which acted from below, through an aperture in a horizontal table, upon the under surface of the cloth to be fed, and operated, in feeding, in combination with a yielding, curved pressure foot, which was pressed from above, by a spring, upon the upper surface of the cloth, such foot also acting as a needle stripper. The Aetna machine was provided, also, with the other devices necessary to make up the combinations covered by the first, second, third, fourth, fifth, sixth and eleventh claims of the Bachelder patent, namely, a reciprocating eye-pointed needle and a reciprocating needle-carrier, moving substantially in vertical planes, a horizontal holding surface provided with a throat for the passage of the needle, (such holding surface forming part of the supporting bed,) and a table, a part of which was so arranged with reference to the feed as to receive and aid in supporting the material, in its passage from the feed. In the Aetna machine the material could be fed perpetually while it was supported horizontally, and a seam of any length could be sewn, without requiring the sewing to be stopped at any time to attach a fresh portion of the material to the feeding instrument. This is a material feature distinguishing the Bachelder machine from those which preceded it. The Aetna machine had, it is true, a capacity beyond that of the Bachelder machine, namely, that of sewing a seam of any desired cur-

[2] [From 6 Fish. Pat. Cas. 488.]

vature, arising from the fact that, in the Bachelder machine, the material is impaled on pins, while, in the Aetna machine, the roughened surface of the feeding cylinder engaged with the material only to such extent as was necessary to move the material forward, but not to such extent as to prevent the free lateral turning of the material by the operator, during the process of feeding, so as to produce a curved or angular seam. But this, though an improvement on Bachelder's invention, embodied that invention.

The machine of the defendants in the present case is known as the Whitney sewing machine, and uses, as a perpetual feed, what is known as the feed of Allen B. Wilson. That feeding arrangement was covered by two patents issued to Wilson, which have now expired. One of them, reissue No. 346, issued January 22d, 1856, was extended, and expired November 12th, 1871. It covered, in its claims, four features of invention: (1) The described method of causing the material to be sewed to progress regularly, by the joint action of the surfaces between which it is clamped, and which act in conjunction; (2) holding the material at rest by the needle, or its equivalent, in combination with the method of causing it to progress regularly; (3) arranging the described feeding surfaces in such relation to the needle, that they or one of them shall perform the office of stripping the material from the needle; (4) so mounting and attaching one of the feeding surfaces to some other part of the machine, that it may be removed or drawn away from the other surface at pleasure. The other patent, reissue No. 414, issued December 9th, 1856, was extended, and expired November 12th, 1871. It covered, by one of its claims, a combination of three elements, namely, a table or platform to support the material to be sewed, holding it for the action of the needle, and presenting it properly to the grasp of the feeding apparatus; a sewing mechanism proper, consisting of a needle and shuttle, or their equivalents; and a mechanical feed, automatic and causing the cloth to progress regularly, to which the cloth is not attached, and so grasping the cloth that it may be turned and twisted by the hand of an operator, such twisting not interfering with the regular progression of the cloth. The feed of Wilson consists of two surfaces or bars, which clamp the material. The material is advanced and moved forward under the needle, to receive the stitches, by the joint operation of such two surfaces or bars. One of such bars has a rough surface and a lateral motion. The other has a smooth surface and no lateral motion.

The machine of the defendants has Bachelder's horizontal holding surface, in having a small horizontal round plate, through slots in which teeth on the reciprocating feed-bar project upward, on which plate the material immediately about the needle rests, so as to be borne up horizontally under the thrust of the needle, such plate being perforated with an opening or throat for the passage of the needle.

The machine of the defendants has Bachelder's receiving plate, in that portion of the said round plate which receives and supports the material as it passes from the feed.

The machine of the defendants has Bachelder's yielding pressure-holder, in having a spring pressure-foot near the needle, which rests on the upper surface of the material, and holds the material to the bed on which it is supported, the pressure foot adapting itself to variations in the thickness of the material.

The machine of the defendants has a reciprocating eye-pointed needle and a reciprocating needle carrier, substantially like those of Bachelder.

In all these particulars in which the Aetna machine was like the Bachelder machine, the defendants' machine does not differ from the Aetna machine. This embraces all particulars except the feed. In the defendants' machine, the cloth is advanced regularly and horizontally, by an intermittent motion, through the joint action of the rough surface of the moving bar beneath and the surface of the pressure foot above. It is apparent that, in the arrangement and operation of the defendants' feed, and its relations to other co-operating parts of the machine, there are the following material features in common with Bachelder's machine: The cloth lies horizontally on the feeding device, and a portion of the surface of the cloth which lies immediately in front of the needle, and of the horizontal holding surface, is supported by the feeding device during the act of feeding. The material is fed perpetually, so that a seam of any length can be sewn without removal or replacement of the parts of the machine. The material is delivered, with a seam sewn in it, upon the receiving plate.

In the Bachelder machine different portions of the belt are feeding at different times, as, in the Aetna machine, different portions of the cylinder were feeding at different times, while, in the defendants' machine, the same part of the feeding bar always acts in feeding. But this difference is immaterial. The action of the parts employed at any one time, in feeding, is the same, in the two machines, so far as the essence of Bachelder's invention of a perpetual feed is concerned. So, too, it is an immaterial difference, that, in the Bachelder machine, the feeding device is always in contact with the material, and always aids in supporting it, while, in the defendants' machine, the feeding device is not always in contact with the material, and, therefore, only aids at intervals in supporting it. Equally immaterial is it, that, the defendants' feeding bar being provided with a roughened surface, instead of with impaling pins, seams of any

desired angularity or curvature can be sewn in the defendants' machine, while such seams cannot be sewn in the Bachelder machine. This is the same difference which existed between the Aetna machine and the Bachelder machine. The increased capacity given to the machine by the facility of turning and twisting the material, due to the absence of impaling pins, is an improvement, but the vital features of Bachelder's arrangement are retained. The feeding device of the defendants has a horizontal surface which, at the time of feeding, aids in supporting the material, and thus makes the feeding possible, and is a perpetual feed, and delivers the material to and upon the receiving plate.

The point most strenuously urged on behalf of the defendants is, that heretofore suits have been brought in many of the courts for infringement of the reissued patents of Wilson, before mentioned, Nos. 346 and 414; that the defendants in those suits have set up the prior existence of the Bachelder machine, and the prior granting of the Bachelder patent, as destroying the novelty of the above-recited claims of the Wilson patents; and that it has been uniformly held that there was nothing in the Bachelder machine or the Bachelder patent to invalidate those claims. These decisions of the courts are urged as decisions that the feeding arrangement of Wilson and the feeding arrangement of Bachelder do not interfere with each other, and, consequently, that the use of the feeding arrangement of Wilson cannot infringe the Bachelder patent. But this is not a logical conclusion from what was decided in the cases referred to. All that was decided in those cases was, that the claims of the Wilson patents covered inventions which were not to be found in the Bachelder patent—inventions beyond anything found in the Bachelder patent, being the inventions claimed in the Wilson patents; but there was no decision that a machine constructed according to the descriptions contained in the specifications of the Wilson patents did not embrace inventions claimed in the Bachelder patent. No such decision could have been made, because no such question was involved. The principle properly applicable to the decision of the question involved in the present motion is a familiar one in the patent law. Bachelder had no right to use Wilson's improvements, without Wilson's consent. Wilson, on the other hand, had no right, in constructing a machine containing his own improvements, to embody therein the improvements patented by Bachelder, without Bachelder's consent.

Nothing is shown which anticipates Bachelder's inventions on the point of novelty. The plaintiff's title and the validity of his claims are free from doubt, and have been established, and the infringement by the defendants' machine is clear. An injunction must issue on all the claims.