### POTTER and others *v.* STEWART.

(*Circuit Court, S. D. New York.* January 22, 1881.)

1. RE-ISSUE—FAILURE TO DESCRIBE EXISTING COMBINATIONS IN ORIGINAL.

It is of no consequence that a re-issue states that certain combinations are found in the machine which will act in a certain way and effect certain results, when the original did not state that such combinations were found there, or failed to state that said modes of operation and said results would follow, provided the said combinations in fact existed in a machine made according to the drawings and description in the original patent, or provided the said modes of operation and the said results in fact followed in a machine so made.

2. RE-ISSUE No. 2,125—"IMPROVEMENT IN SEWING MACHINES"—INFRINGEMENT.

Re-issued letters patent No. 2,125, granted to John Bachelder, December 12, 1865, for an "infringement in sewing machines," *held infringed*, although certain specific devices were found in the defendant's machine, not known or in use at the date of the Bachelder inventions.—[ED.

*George Gifford* and *Solomon J. Gordon,* for plaintiffs.
*William H. McDougall,* for defendant.

BLATCHFORD, C. J. This suit is brought on re-issued letters patent No. 2,125, granted to John Bachelder, December 12, 1865, for an "improvement in sewing machines," (the original patent having been granted to him May 8, 1849, and extended for seven years from May 8, 1863, and re-issued to him September 22, 1863;) the said re-issued patent having been, by an act of congress approved July 14, 1870, (16 St. at Large, 656,) extended for seven years from the eighth of May, 1870. This same re-issue was under consideration by this court in *Potter* v. *Braunsdorf,* 7 Blatchf. 97, and in *Bachelder* v. *Moulton,* 11 Blatchf. 304. Numerous questions raised in the

present case were passed upon in those cases adversely to the defendants therein. There are 14 claims in the re-issue. In the Braunsdorf suit the defendant's machine was the Ætna machine, and was held to infringe claims 1, 2, 3, 4, 5, 6, and 11. In the Moulton suit the defendant's machine was the Whitney machine, and was held to infringe all the claims. The Ætna machine had a wheel feed. The Whitney machine had Allen B. Wilson's four-motion feed.

The defendant's machine in the present case infringes all the claims of the patent. It is contended, for the defendant, that the re-issue is not for the same invention as the original patent, and that the re-issue describes and claims more than Bachelder actually invented. Mr. E. S. Renwick, an expert witness for the plaintiffs, testifies that every improvement that is specified in the re-issue is found described in the specification and drawings of the original patent. There is no testimony in contradiction of this. This being so, it follows, necessarily, that every combination described in the re-issue as performing a given office existed in the machine described and shown in the specification and drawings of the original patent, and performed, in a machine constructed in accordance with the specification and drawings of the original patent, the same office that it performs in a machine constructed in accordance with the specification and drawings of the re-issue. Therefore, every such combination might have been patented in the original patent by a proper claim. If so, not only was a re-issue proper, but a re-issue in the form granted. It is of no consequence that the re-issue states that certain combinations are found in the machine which will act in a certain way and effect certain results, when the original did not state that such combinations were found there, or failed to state that said modes of operation and said results would follow provided the said combinations in fact existed in a machine made according to the drawings and description in the original patent, or provided the said modes of operation and the said results in fact followed in a machine so made. To supply such defects is the very object and office of a re-issue.

It is very clear that the carved piece of metal in the Bachelder machine acts not only to discharge the cloth from the teeth of the feeding belt, but to receive the cloth after it is discharged. If that be so, it was proper to call it a receiving plate in the re-issue, and to set forth its office as such, although the original failed to do so; and, indeed, because the original so failed, its office in discharging the cloth being also set forth in the re-issue. So, also, as to the pressure roller. It is, in fact, according to the description and drawings of the original patent, a yielding pressure roller. It is so called in the re-issue, but not in the original, it being called in the original a heavy pressure roller. It was proper, in the re-issue, to call it yielding, the re-issue also calling it heavy.

It is contended for the defendant that his machine cannot be held to infringe for the reason alleged, that the specific devices found in it were not known or in use at the date of Bachelder's inventions. The specific devices especially referred to are the four-motion feed and the presser-foot. But the four-motion feed in the defendant's machine advances the material to be served, regularly and horizontally, by an intermittent motion, over and upon the horizontal holding surface through which the needle acts, and over and upon the supporting bed by which the material is supported, and delivers it automatically, without requiring the sewing to be stopped for the purpose of attaching fresh portions of the material. The teeth of the feed-bar project through a slot in the horizontal plate or holding surface through which the needle acts, and engage with the material and compel it to advance when the feed is moved forward.

In the Bachelder machine the feed is a belt with points, which penetrate the material and carry it forward intermittently, and is returned, after delivering the material fed, by passing around rollers out of contact with the material. The defendant's feed-bar moves directly backward, after dropping out of contact with the material. But, in respect to supporting the material horizontally while it is being fed, and taking hold of the material and advancing it by a regular, automatic, intermittent motion over and upon the horizontal

holding surface through which the needle acts, a fresh portion being taken hold of and an equal portion delivered at each stitch, and perpetually delivering the material on the receiving plate, so that any length of seam desired may be fed through and delivered during the continuous action of the machine, the two feeds perform the same operations in the same way, and by substantially the same means. These operations had not been performed by any feed, in combination with the other things it is combined with in the Bachelder machine, before Bachelder invented his machine. This being so, any improvement in the feed, while the operations so performed by it are retained, may be patentable in respect to doing something by the use of it which the Bachelder feed would not do; but it cannot be used to perform the operations referred to without invading Bachelder's rights. To say that this improvement in the feed may be used, because it has features in it which did not exist before Bachelder's feed, leads necessarily to the conclusion that if those features did exist before Bachelder's feed, it could not be used. Yet if those features did exist before Bachelder's feed they could, of course, be used always as against any claim under Bachelder's feed. Bachelder cannot interfere with those features, so far as they do not concern themselves with the performance, in substantially the same way, and by substantially the same means, of the same operations which his instrumentalities perform; but, if they do concern themselves with such performance, he can interfere with them for the very reason that they did not exist before his invention; while, if they had existed before his invention, he clearly could not interfere with them.

The same remarks apply to the presser-foot in the defendants' machine. It aids in feeding, and acts as a stripper; but it also performs the same operation, in the same way, that is performed by the yielding pressure-holder of the Bachelder machine, of resting on the upper surface of the material, and holding it to the bed beneath on which it is supported, and adapting itself to the variations in the thickness of the material. The fact that it is a roller in the Bachelder machine,

and is not a roller in the defendant's machine, is of no importance, that being a mere matter of friction. So, action by weight in the former, and by a spring in the latter, makes no difference. On the question of novelty, it is sufficient to say that none of the claims of the Bachelder patent are anticipated by Thimonier, or Howe, or Morey & Johnson, or Conant. The claims of the patent are for combinations of mechanism. Those combinations have, necessarily, certain functions and modes of operation, which are set forth in the specification. But the claims are not claims to functions or results. The combinations in any infringing machine must, of course, to infringe, have the same functions and modes of operation which the Bachelder combinations have; but, in addition, the means must be substantially the same.

There must be a decree for the plaintiffs as to all the claims.